IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION

| | |
|---|---|
| LAURA CRANFILL, individually, and LAURA CRANFILL and STEVEN CRANFILL, as next kin of TYLER CRANFILL, deceased, and KATIE CRANFILL, ) ) ) ) ) ) | |
| Plaintiffs, ) ) | |
| v. ) ) | NO.   04-1147 T/An |
| BREW BROTHERS, INC., et al., ) ) | |
| Defendants. ) | |

## REPORT AND RECOMMENDATION

Plaintiffs filed this personal injury action against Defendants Brew Brothers, Inc., Jerry Gay, Mike Jones, and Jason Patterson. Defendant Jason Patterson has since been dismissed from this action.[1] On September 30, 2005 the Clerk of the Court entered default judgment against Defendants Brew Brothers, Inc., Jerry Gay, and Mike Jones (collectively "Defendants"). The Court Granted Plaintiff's Motion for Default Judgment on October 5, 2004,[2] and United States District Judge James D. Todd referred this matter to the Magistrate Judge for a report and recommendation on damages.

---

[1] The summons for Defendant Jason Patterson was returned as unexecuted on September 14, 2004. As such, the Court entered an Order requiring Plaintiffs to show cause why the action against Defendant Patterson should not be dismissed for failure to prosecute, and Plaintiffs responded with a letter stating they had no objection to the dismissal of Defendant Patterson. Therefore, at docket entry 33, the Court dismissed Jason Patterson.

[2] Defendants filed a Motion to Set Aside Order on Motion for Default Judgment, which was denied by Judge Todd on December 29, 2004.

1

## **BACKGROUND**

### I. The Accident

Plaintiffs filed this personal injury and wrongful death action against Defendants under a dram shop cause of action. Plaintiffs were involved in an automobile accident occurring on Interstate I-40 in Jackson, Madison County, Tennessee, which resulted in serious injuries to Plaintiffs Laura Cranfill and Katie Cranfill and the death of Plaintiff Tyler Cranfill. Defendants are the owners of Barley's Brewhouse and Eatery ("Barley's"), a bar and restaurant in Jackson, Tennessee.

In their Complaint, Plaintiffs allege that Mr. William J. Thweatt ("Thweatt") operated a motor vehicle while in an intoxicated state when he struck Plaintiffs' vehicle. Plaintiffs further allege that Thweatt consumed excessive quantities of alcohol at Barley's on July 22, 2003, and that Thweatt and a female companion had to be assisted to their car as the two left Barley's that evening. Thweatt was driving his car on Interstate 40 in an eastbound direction when he crossed the median at an estimated speed of 90 miles per hour. Thweatt struck Plaintiffs' car head on, causing the injuries to Laura Cranfill ("Mrs. Cranfill") and Katie Cranfill ("Katie") and the death of Tyler Cranfill ("Tyler"). Thweatt was also killed in the car accident, but a blood alcohol test concluded that at the time of the accident Thweatt's blood alcohol level was at a .27 level of intoxication.

Plaintiffs filed this action pursuant to Tennessee Code Annotated § 57-10-102 against Defendants as sellers of the alcoholic beverages that proximately caused Plaintiffs' injuries and damages. Plaintiffs allege that Defendants sold alcohol to Thweatt when he was obviously intoxicated and that the injuries resulting from Thweatt's loss of control of his vehicle were the

2

direct and proximate result of Thweatt's consumption of alcohol sold at Barley's.

## II. Laura Cranfill

Mrs. Cranfill received serious and life threatening injuries in the accident. Specifically, she suffered from several injuries, including an open abdominal wound, a laceration to the spleen, various fractures, atelectasis of the left lung, and cuts and contusions over her body.[3] Ms. Cranfill spent 67 days in multiple hospitals after the accident, and she had multiple surgeries. Plaintiffs allege that Ms. Cranfill's healing was protracted and painful, and that wound care for her injuries was extremely complicated and painful. She was bound to a wheel chair for almost five months, and she has had only moderate success in returning to activities she enjoyed before the accident. Ms. Cranfill sustained medical charges of over $400,000.00.

Ms. Cranfill now suffers from numerous disabilities, including (1) osteoarthritis of her right ankle, (2) weakness of her left knee, (3) a cyst on her left breast, (4) a blank spot in her vision, (5) mechanical weakness and instability limiting ambulation to no more than 2-3 steps without assistance, (6) back pain, (7) difficulty in sitting and sleeping, (8) ankle pain, and (9) the inability to walk. She is required to use a wheelchair or a four-wheeled walker, and the accident left her with many disfiguring scars. She will require future surgeries and on-going medical treatment.

Plaintiffs allege that Ms. Cranfill's life has been altered in the following ways. She can no longer cook or do household chores. She cannot exercise, and as a result of her inability to exercise, she has gained over 65 pounds since the accident. She cannot take a bath in a tub, and

---

[3] The injuries to Plaintiffs, and any allegations concerning those injuries, were taken from the "Memorandum Prepared with Assistance of Laura Cranfill" filed with the Court on November 17, 2004.

cannot take more than 4-5 steps without support. She cannot participate in the recreational activities she used to take part in before the accident, including camping, tennis and bowling. She must have a companion with her at all times for support and assistance, and currently, she cannot go into the sun due to the effect the sun's rays will have on her scars. She also suffers from sadness and depression as a result of the death of her son in the accident.

Ms. Cranfill missed seven months of work after the accident. At her salary of $35,152 per year, Ms. Cranfill missed $20,505 of pay as a result of the accident. Plaintiffs allege that she also missed an increase in her salary while recovering from the injuries, which would have given her a raise of $3.00 an hour. This raise would have entitled Ms. Cranfill to an additional $6,240 in salary.

## II. Katie Cranfill

Katie Cranfill is 12 years old. She was 10 years old at the time of the accident. Katie sustained various injuries as a result of the accident, but her physical injuries were not as severe as the other occupants of the car. Katie's injuries included (1) a left femur fracture, (2) a right bone forearm fracture, (3) a spine compression fracture, (4) a pulmonary contusion, and (5) cuts and contusions over her body. Katie was hospitalized in both Tennessee and Texas, and her medical bills currently total $30,806.22. Katie still suffers from back pain, and she has touch sensitivity to her right arm which, although healed, is somewhat bowed.

Katie is in the 6th grade, and although she has returned to most of her pre-wreck activities, she has exhibited certain signs of post-traumatic stress disorder. Katie is often anxious and overly protective of her mother, and at other times Katie is resentful of the limitations placed on her by Ms. Cranfill, who is overly protective of her only remaining child.

### III. Tyler Cranfill

Tyler Cranfill was born on August 13, 1990, and Tyler was 12 years old when he died from injuries sustained in the accident on July 23, 2000. Plaintiffs allege that Tyler survived the crash and endured over two hours of pain and suffering before he died. It took 28 minutes for emergency personnel to remove Tyler from the wrecked car, and he sustained multiple fractures of his arms and legs, open wounds, and tissue injuries. He had to be restrained during efforts to begin intravenous access and incubation. He was transferred by air ambulance to the Jackson-Madison County General Hospital where personnel noted he was alert, talkative, and following commands. Although the emergency room staff spent two hours treating Tyler, his injuries were too severe and he died in the early morning hours of July 23, 2000. Tyler's body was flown back to Texas for burial. Plaintiffs allege his medical expenses totaled $7,808.50, and his funeral expenses totaled $4,510.00.

Before his death Tyler was an A-B student at Liberty Hill Middle School in Killeen, Texas. He participated in several school sports, and he was involved with his school's choir. Plaintiffs state that Tyler had every intention of going to college and becoming a scientist, and that Tyler wanted to make a great deal of money in order to take care of his mother. Plaintiffs submitted to the Court an Appraisal of Economic Loss for Tyler, which was prepared by Dr. Kent Gilbreath of Baylor University. Dr. Gilbreath prepared three separate estimates for Tyler's pecuniary value of life: (1) as a high school graduate, estimated at $835,661; (2) with two years of college education, estimated at $925,309; and (3) as a college graduate, estimated at $1,981,890.

## ANALYSIS

### I. Choice of Law

In this diversity of citizenship case, Tennessee law should be applied to determine the fault and liability of the parties. Tennessee has adopted the Restatement (Second) of Torts approach to determining choice of law in diversity cases. Under the Restatement approach, when determining which state's law to apply, the Court should take into consideration "(a) the place where the injury occurred, (b) the place where the conduct causing the injury occurred, (c) the domicile, residence, nationality, place of incorporation and place of business of the parties, [and] (d) the place where the relationship, if any, between the parties is centered." *Messer Griesheim Industries, Inc. v. Cryotech of Kingsport, Inc.*, 131 S.W.3d 457, 474 (Tenn. Ct. App. 2003). In this case, the injury occurred in Tennessee, the Defendants are from Tennessee, and the Plaintiffs filed this lawsuit in Tennessee. As such, Tennessee has the most significant relationship and Tennessee substantive law should be used.

### II. Ms. Cranfill's Personal Injuries

Under Tennessee law, "[t]here is no mathematical rule or formula for computing damages in a negligence case." *Brown v. Null*, 863 S.W.2d 425, 429-30 (Tenn. Ct. App. 1993). In personal injury cases, the "plaintiff is entitled to reasonable compensation for bodily injuries, pain and suffering, disability, loss of earnings and expenses." *Id.* at 430. Tennessee also permits a plaintiff to recover damages for loss of enjoyment of life in personal injury cases. *See Lawrence v. Town of Brighton*, No. 02A01-0801-CV-00020, 1998 WL 794418, at *5 (Tenn. Ct. App. Oct. 28, 1998). There is no "fixed or certain standard for measuring such damages," but the damages are determined by the trier of fact using "the facts and circumstances of the case."

6

*Brown*, 863 S.W.2d at 430. The amount awarded is primarily for the jury, or in the case of a non-jury trial, to the trial judge. *See id.* As noted by the Sixth Circuit Court of Appeals, the Court should award compensatory damages "to make the person whole in the only way the court knows how, which is to give an equivalent in money for each loss suffered." *Thompson v. Nat'l Railroad Passenger Corp.*, 621 F.2d 814, 824 (6th Cir. 1980).

The Court concludes Ms. Cranfill is entitled to compensation for her medical bills in the amount of $421,706.34. (*See* Mem. Prepared with Assistance of Laura Cranfill, at Ex. 14). For good cause shown the Court recommends that Defendants should be responsible for paying all of Ms. Cranfill's medical bills, or $421,706.34.

Ms. Cranfill is also entitled to monetary damages for pain and suffering. Damages for pain and suffering "compensate[] the victim for the physical and mental discomfort caused by the injury . . . ." *Thompson*, 621 F.2d at 824. In this case, Ms. Cranfill has experienced significant pain and suffering. Ms. Cranfill has been operated on numerous times, and she is expected to undergo numerous other operations in the future. Ms. Cranfill's injuries included damages to her internal organs, broken bones, cuts and contusions throughout her body. Pictures provided to the Court further evidence that the injuries sustained by Ms. Cranfill were more than minor injuries. Ms. Cranfill cannot stand for long periods of time, and she has been required to undergo hundreds of hours of treatment for her injuries. The Court therefore recommends that Defendants should be required to pay Ms. Cranfill $1,000,000.00 for the physical pain and suffering caused by the accident.

Ms. Cranfill is also entitled to damages for her disabilities and for her loss of enjoyment of life, which "compensates the victim for the limitations on the persons's life created by the

injury." *Id.* As a result of the accident, Ms. Cranfill can no longer cook, do household chores, exercise, take a bath in a tub, participate in many recreational activities such as camping, tennis and bowling, or take more than 4-5 steps without support. Ms. Cranfill cannot go into the sun due to the effect the sun's rays will have on her scars, and Ms. Cranfill suffers from sadness and depression as a result of the death of her son in the accident.

As mentioned above, Ms. Cranfill suffers from numerous disabilities, including (1) osteoarthritis of her right ankle, (2) weakness of her left knee, (3) a cyst on her left breast, (4) a blank spot in her vision, (5) mechanical weakness and instability limiting ambulation to no more than 2-3 steps without assistance, (6) back pain, (7) difficulty in sitting and sleeping, (8) ankle pain, and (9) the inability to walk. Furthermore, Ms. Cranfill is required to use a wheelchair or a four-wheeled walker, and the accident left her with many disfiguring scars. "Permanent impairment compensates the victim for the fact of being permanently injured whether or not it causes any pain or inconvenience . . . ." *Id.* As such, the Court recommends that Ms. Cranfill should be awarded the sum of $1,000,000.00 for her injuries and loss of enjoyment of life.

Finally, Ms. Cranfill should be awarded damages for loss of earning capacity and receive compensation for those wages she missed while recovering from the accident. Plaintiffs allege that Ms. Cranfill did not earn $20,505.00 in salary as a result of the accident. Moreover, as a result of a missed raise, Ms. Cranfill did not earn an additional $6,240.00 in salary. As such, the Court recommends that Defendants should pay Ms. Cranfill $26,745.00. The Court also concludes that in the future, Ms. Cranfill will be unable to earn a salary similar to her pre-accident salary. As such, Defendants should be required to pay Ms. Cranfill for her future loss of earning capacity. After review, the Court recommends that Defendants pay Plaintiffs

$125,000.00 for Ms. Cranfill's future loss of earning capacity.

Therefore, for Ms. Cranfill's medical bills and all of the injuries sustained by Ms. Cranfill, the Court recommends that Defendants be required to pay Plaintiffs $2,573,451.34.

### III. Katie's Personal Injuries

Following the guidelines set forth above, Katie should be awarded damages for her personal injuries. Specifically, Katie "is entitled to reasonable compensation for bodily injuries, pain and suffering, disability, loss of earnings and expenses." *Brown,* 863 S.W.2d at 430. Plaintiffs have alleged that Katie incurred $30,806.22 in medical expenses, and Defendants should be required to fully pay Katie's medical bills. Similar to her mother, Katie has also experienced pain and suffering for her injuries. Katie's medical bills alone evidence substantial hardship on her life, as she spent time in two separate hospitals for the injuries she sustained in the accident. Therefore, the Court recommends that Defendants be required to pay Katie $150,000.00 for pain and suffering incurred as a result of the accident. Plaintiffs admit that Katie has returned to most of her daily activities, but Katie will never be the person she was before the accident. Therefore, in order to make Plaintiff whole again, the Court recommends that Defendants should be required to pay Katie $100,000.00 in damages for disabilities and loss of enjoyment of life. Because Katie did not work, she is not entitled to damages for loss in earning capacity.

Therefore, for Katie's medical bills and for all of the injuries sustained by Katie, the Court recommends that Defendants be required to pay Plaintiffs $280,806.22.

### III. Tyler's Wrongful Death Damages

Wrongful death damages in Tennessee are determined by applying Tenn. Code Ann. §

9

20-5-113, which notes in pertinent part that a party shall be entitled to "have the right to recover for the mental and physical suffering, loss of time, and necessary expenses resulting to the deceased from the personal injuries, and also the damages resulting to the parties for whose use and benefit the right of action survives from the death consequent upon the injuries received." Tenn. Code Ann. § 20-5-113. Wrongful death damages are split into two classifications. "The first classification permits recovery for injuries sustained by the deceased from the time of injury to the time of death. Damages under the first classification include medical expenses, physical and mental pain and suffering, funeral expenses, lost wages, and loss of earning capacity." *Jordan v. Baptist Three Rivers Hospital*, 984 S.W.2d 593, 600 (Tenn. 1999) (citing Tenn. Code Ann. § 20-5-113). "The second classification of damages permits recovery of incidental damages suffered by the decedent's next of kin." *Id.*

Plaintiffs are entitled to receive damages for the various expenses incurred before Tyler died. Plaintiffs have submitted that Tyler incurred $7,808.50 in medical bills; therefore, the Court recommends that Defendants should compensate Plaintiffs for these expenses. Tyler did not work, so Plaintiffs are not entitled to damages for lost wages and loss of earning capacity, but Tyler's family did incur funeral expenses. Plaintiffs submit that they incurred $4,510.00 in funeral expenses, but these expenses include three cemetery plots at $700.00 each. (*See* Mem. Prepared with Assistance of Laura Cranfill, at Ex. 15). Plaintiffs should not be compensated for the excess cemetery plots; therefore, the Court recommends that Defendants should compensate Plaintiffs $3,110.00 for funeral expenses.

The Court should also award Plaintiffs damages for Tyler's pain and suffering. While there are no actual formulas for determining an amount of damages for pain and suffering, the

Tennessee Pattern Civil Jury Instructions state that the following should be considered by the trier of fact:

> Reasonable compensation for any physical pain and suffering suffered by the Plaintiff and which his or her injury was the proximate cause and for pain and suffering reasonably certain to be experienced in the future from the same cause. No definite standard or method of calculation is prescribed by law by which to fix reasonable compensation for pain and suffering. Nor is the opinion of any witness required as to the amount of such reasonable compensation. In making an award for pain and suffering, you should exercise your authority with calm and reasonable judgment and the damages you fix shall be just and reasonable in the light of the evidence.

*Cortazzo v. Blackburn*, 912 S.W.2d 735, 741 (Tenn. Ct. App. 1995). As mentioned, the amount of damages awarded is primarily for the jury to determine. *See Patterson*, 879 S.W.2d at 741. In this case Tyler suffered acute and severe pain following the car accident. Rescue workers needed almost half an hour to remove Tyler from the vehicle, and once removed, Tyler had to be flown via helicopter to Jackson-Madison County General Hospital's critical care unit for treatment of his many internal injuries and broken bones. Support staff at the hospital recorded that Tyler appeared alert and talkative when he arrived at the hospital; therefore, Tyler was conscious of the pain he was experiencing. Moreover, Tyler's pain was so great that he had to be restrained when hospital personnel began to work to save his life. As such, for these reasons, the Court recommends that Plaintiffs be awarded $100,000.00 for Tyler's pain and suffering.

Plaintiffs are also entitled to recover the incidental damages suffered by Tyler's next of kin, which are usually determined to include the pecuniary value of the decedent's life and loss of consortium damages. "When a plaintiff's recovery is based upon the pecuniary value of the decedent's life, the trial court must make this determination upon a consideration of several factors, including the decedent's life expectancy, 'age, condition of health and strength, capacity

11

for labor and for earning money through skill in any art, trade, profession, and occupation or business." *Hutton v. City of Savannah*, 968 S.W.2d 808, 811 (Tenn. Ct. App. 1998) (quoting *Thrailkill v. Patterson*, 879 S.W.2d 836, 841 (Tenn. 1994)). Pecuniary value also takes into account the decedent's living expenses, which are subtracted from the total pecuniary value.

The Court recommends that Plaintiffs should be awarded a lump sum amount of damages to compensate Plaintiffs for Tyler's pecuniary value of life. Because he was only a teenager, there is no way of knowing how Tyler would live his life, what profession he would choose, whether he would be married, or how long he would live. As such, the Court recommends that Plaintiffs should be awarded the average of the three recommended pecuniary values prepared by Dr. Kent Gilbreath of Baylor University. As mentioned above, these values are: (1) as a high school graduate, estimated at $835,661.00; (2) with two years of college education, estimated at $925,309.00; and (3) as a college graduate, estimated at $1,981,890.00. The average of these three figures is $1,247,620.00; therefore, the Court recommends Plaintiffs be awarded this sum.

The Court also recommends that Ms. Cranfill and her husband be awarded loss of consortium damages for Tyler's death. As mentioned, pecuniary value "is also comprised of the value of human companionship." *Thurman v. Sellers*, 62 S.W.3d 145, 159 (Tenn. Ct. App. 2001). Human companionship consists of "several elements, encompassing not only tangible services provided by a family member, but also intangible benefits each family member receives from the continued existence of other family members. Such benefits include attention, guidance, care, protection, training, companionship, cooperation, affection, love, and in the case of a spouse, sexual relations." *Id.* (quoting *Jordan*, 984 S.W.2d at 602). Tennessee courts have held that loss of consortium damages are available to parents after the wrongful death of their minor

12

children. *See id.* at 160; *Hancock v. Chattanooga-Hamilton County Hosp. Authority*, 54 S.W.2d 234, 237 (Tenn. 2001). No award of damages for loss of consortium will ever make Tyler's parents whole, as children can provide a parent with an endless amount of affection and love. Nevertheless, the Court has reviewed the facts of this case and recommends that Tyler's parents should be awarded $1,000,000.00 in loss of consortium damages.

Therefore, the Court recommends that Defendants be required to pay Plaintiffs $2,358,538.50 for the wrongful death of Tyler.

## IV. Punitive Damages

Plaintiffs also request punitive damages be awarded for Defendants' conduct. In Tennessee, the Court should hold a bifurcated trial to determine punitive damages; however, because default judgment has been entered, it is appropriate at this time for the Court to determine if punitive damages should be awarded to Plaintiffs. Punitive damages "should operate to punish the defendant and deter others from like offenses." *Hodges v. S.C. Toof & Co.*, 833 S.W.2d 896 (Tenn. 1992). "Tennessee presently allows punitive damages in cases involving fraud, malice, gross negligence, oppression, evil motives, conscious indifference, and reckless conduct implying 'disregard of social obligations.'" *Id.* at 900-01. These damages should be awarded in only cases involving the most egregious of wrongful acts. *See id.* at 901. Therefore, in Tennessee, the Court can award punitive damages only if the defendant acted intentionally, fraudulently, maliciously, or recklessly. *See id.*

In this case Defendants own and operate a restaurant and bar in Jackson, Tennessee. Defendants are alleged to have served alcohol to an individual who was obviously intoxicated, and Plaintiffs allege that the alcohol Defendants served to Thweatt was the proximate and legal

13

cause of the injuries sustained by Plaintiffs. Plaintiffs even allege that Thweatt was helped to his car when he was intoxicated. A person acts recklessly when "the person is aware of, but consciously disregards, a substantial and unjustifiable risk of such a nature that its disregard constitutes a gross deviation from the standard of care that an ordinary person would exercise under all the circumstances." *Id.* In this case Defendants knew they were not permitted to sell alcoholic beverages to a person that was obviously intoxicated; however, it appears that Defendants did serve alcohol to Thweatt even though he was obviously intoxicated. Furthermore, driving while intoxicated poses a substantial risk to society, and Defendants consciously disregarded that substantial risk when they permitted Thweatt to continue consuming alcohol and when they permitted Thweatt to leave Barley's while driving under the influence. As mentioned, Thweatt's blood alcohol level was 0.27, over three times the legal limit of 0.08, so it is unlikely that Defendants were unable to recognize Thweatt was intoxicated. Therefore, the Court concludes that Defendants' conduct was reckless and that this case involves an egregious act. As such, the Court recommends that punitive damages should be awarded to Plaintiffs in an attempt to both punish Defendants and to deter future misconduct.

Because the Court recommends that punitive damages should be awarded, the Court must determine the amount of punitive damages that should be imposed on Defendants. When determining the amount of punitive damages, it should be remembered that the primary purpose of punitive damages is to deter misconduct. The trier of fact should take into account nine factors when awarding punitive damages, including:

   (1) The defendant's financial affairs, financial condition, and net worth;
   (2) The nature and reprehensibility of defendant's wrongdoing, for example
      (A) The impact of defendant's conduct on the plaintiff, or

14

    (B) The relationship of defendant to plaintiff;
(3) The defendant's awareness of the amount of harm being caused and defendant's motivation in causing the harm;
(4) The duration of defendant's misconduct and whether defendant attempted to conceal the conduct;
(5) The expense plaintiff has borne in the attempt to recover the losses;
(6) Whether defendant profited from the activity, and if defendant did profit, whether the punitive award should be in excess of the profit in order to deter similar future behavior;
(7) Whether, and the extent to which, defendant has been subjected to previous punitive damage awards based upon the same wrongful act;
(8) Whether, once the misconduct became known to defendant, defendant took remedial action or attempted to make amends by offering a prompt and fair settlement for actual harm caused; and
(9) Any other circumstances shown by the evidence that bear on determining the proper amount of the punitive award.

*Id.* at 901-02.

  In taking into account these nine factors, the Court notes that Defendants are the owners of a successful business. Furthermore, the nature and reprehensibility of Defendant's wrongdoing is severe. Reprehensibility is determined "by considering whether the harm caused was physical as opposed to economic; the tortious conduct evinced an indifference to or a reckless disregard of the health or safety of others; [or whether] the target of the conduct had financial vulnerability . . . ." *State Farm Mutual Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 419 (2003). Those who sell alcoholic beverages should not be permitted to knowingly sell more beverages to a customer when that customer is intoxicated. No amount of additional profits are worth the danger such a sale imposes on society. Defendants recklessly disregarded the health and safety of those who would be driving on the public roads across Tennessee when they sold Thweatt additional alcohol and helped Thweatt to his car.

As such, the Court recommends that Plaintiffs should be awarded $1,500,000.00 in punitive damages.

## **CONCLUSION**

For these reasons, the Court recommends that Defendants should be required to pay Plaintiffs a total of $6,712,796.06. ANY OBJECTIONS OR EXCEPTIONS TO THIS REPORT MUST BE FILED WITHIN TEN (10) DAYS FROM THE DATE OF SERVICE OF THE REPORT. FAILURE TO FILE THEM WITHIN TEN (10) DAYS OF SERVICE MAY CONSTITUTE A WAIVER OF OBJECTIONS, EXCEPTIONS, AND FURTHER APPEAL.

*S. Thomas Anderson*
S. THOMAS ANDERSON
UNITED STATES MAGISTRATE JUDGE

Date: June 14, 2005

16

UNITED STATES DISTRICT COURT - WESTERN DISTRICT OF TENNESSEE



# Notice of Distribution

This notice confirms a copy of the document docketed as number 35 in case 1:04-CV-01147 was distributed by fax, mail, or direct printing on June 15, 2005 to the parties listed.

---

James F. Horner
GLASSMAN EDWARDS WADE & WYATT, P.C.
26 N. Second Street
Memphis, TN 38103

Jay C. English
ENGLISH & ASSOCIATES
1201 Main St.
Ste. 1414
Dallas, TX 75202

Mickey J. Blanks
BLANKS GREENFIELD & RHODES
122 N. Main at Calhoun
Temple, TX 76503--086

Tim Edwards
GLASSMAN EDWARDS WADE & WYATT, P.C.
26 N. Second Street
Memphis, TN 38103

Mickey J. Blanks
BLANKS GREENFIELD & RHODES
P.O. Box 867
Temple, TX 76503--086

Michael E. Keeney
THOMASON HENDRIX HARVEY JOHNSON & MITCHELL
40 S. Main St.
Ste. 2900
Memphis, TN 38103--552

Dale H. Tuttle
GLASSMAN JETER EDWARD & WADE
26 N. Second Street
Memphis, TN 38103

J. Kimbrough Johnson
THOMASON HENDRIX HARVEY JOHNSON & MITCHELL
40 S. Main St.
Ste. 2900
Memphis, TN 38103--552

Honorable James Todd
US DISTRICT COURT